**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KANDY STEMPLE, as the wife and              )
heir at law of James Stemple, deceased;     )
as the Special Administrator of the         )
Estate of James Stemple, deceased,          )
JESSE STEMPLE, JOSHUA STEMPLE,              )
ANNA STEMPLE, and JERAME STEMPLE,           )
                                            )
                              Plaintiffs,   )
                                            )
v.                                          )        Case No. 07-4022-KGS
                                            )
ZURICH AMERICAN INSURANCE                   )
COMPANY                                     )
                                            )
and                                         )
                                            )
GREAT AMERICAN CASUALTY COMPANY,            )
                                            )
                              Defendants.   )

**MEMORANDUM AND ORDER**

       This matter comes before the court upon Zurich American Insurance Company's

(Defendant) Motion for Summary Judgment (Doc. 45).  Plaintiffs have filed a response (Doc. 50)

to which Defendant has filed a reply (Doc. 51).  Therefore the issues are fully briefed and the

court is prepared to rule.

       Defendant seeks summary judgment as to plaintiffs' claim that they are entitled to

underinsured motorist coverage pursuant to insurance coverage issued by defendant.  As detailed

below, the court finds that summary judgment should be denied.

I.      **Factual Background.**

  A.      **Vehicle Accident and Policy Coverage.**

Many, but not all, of the relevant facts of this case are essentially uncontroverted.  James Stemple was employed as a truck driver for Panther II Transportation, Inc. (Panther).  On May 19, 2006, while driving on behalf of his employer, Mr. Stemple was involved in an fatal automobile accident.  The accident occurred on I-35 near the Sedgwick and Sumner County, Kansas lines when Kristine Harris veered into Mr. Stemple's lane, causing him to lose control of his truck and drive into a ditch.  Mr. Stemple died in the accident.

At the time of the accident, Ms. Harris carried automobile liability insurance with limits of $50,000 per person and $100,000 per accident.  Because Mr. Stemple was working for Panther at the time of the accident, he was covered by Panther's commercial truckers' insurance Policy No. TRK 9299369-05, issued by Zurich American Insurance Company (Zurich), which provides liability coverage limits of $5,000,000.

  B.      **Policy Issuance and Purported Rejection of Insurance Coverage.**

On July 22, 2005, William Meyerholt, Zurich Account Executive, sent John Sliter, Panther Controller, a letter regarding uninsured/underinsured motorist coverage for Trucker Policy No. TRK 9299369-05, which provided coverage for the truck driven by James Stemple, and for Business Automobile Policy No. BAP 9300064-05, another policy issued by Zurich to Panther providing commercial business automobile coverage.  The letter states that enclosed is a "Uninsured/Underinsured Motorists Coverage Selection/Rejection/Limits Summary Form" (Summary Form) and state specific uninsured/underinsured selection/rejection forms.  Mr. Meyerholt explained the purpose of the Summary Form was "to eliminate the need for your

2

signing and dating those state forms where no signature is required."  The letter also states that

the Summary Form eliminates the need to include Panther's policy number and the named

insured on each state form, and that the limits chosen by Panther for uninsured and underinsured

motorists coverage were entered as applicable on the summary form.  The letter also requests

that Mr. Sliter sign state specific forms for the twenty one states that require separate signatures.

The letter lists states that require a signed, written rejection form.  While Kansas does not appear

on the list, a Kansas specific form with a signature line was included but only for Policy No.

BAP 9300064-05.  Apparently, no such form was submitted for Policy No. TRK 9299369-05,

the policy applicable to James Stemple's truck.  The letter goes on to say, "Your signature on the

summary form indicates that you have read and understand each state-specific form and that the

selections or rejections marked on the state forms have been accepted by you."

On September 16, 2005, Panther submitted to Zurich the Summary Form.  The form was

signed by Mr. Sliter on behalf of the company.  The Summary Form states,

> "Your policy(s) contain Uninsured/Underinsured Motorists Coverage
> Selection/Rejection and Limits Options forms which allow you to reject coverage
> or to select various limits and coverage options.  Your signature on this summary
> form indicates that you have read and understand each state-specific form and that
> the selections or rejections marked on the state forms have been accepted by
> you."

The Summary Form contains a summary listing of the coverage provided for each state.

The coverage listed on the Summary Form for the state of Kansas is $25,000 per person and

$50,000 per accident.  The Summary Form further states:

> "**Failure to return the signed Uninsured/Underinsured Motorist (UM/UIM)
> Selection/Rejection Summary Form and required state-specific forms prior
> to the policy inception date(s) will result in the policy being issued with
> coverage limits imposed by operation of state law.  In such event, you shall
> reimburse us for the payments made on UM/UIM claims.  The amount of**

**your reimbursement obligation shall be equal to the amount of loss paid in excess of the UM/UIM limits shown in the Automobile Liability Limits section of the proposal.**"

"THIS SUMMARY IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE.  YOU ARE REQUIRED TO DO SO."

The form states that it applies to Policy Nos. BAP 9300064-05 and TRK 9299369-05, the policy at issue in this case.  The Summary Form, directly above Mr. Sliter's signature,  included the following acknowledgment in bold type: "I acknowledge that I have reviewed each individual state's selection/rejection form, I have made the elections indicated and that I have the authority to sign this form on behalf of all Named Insureds on those policies listed above."

**C.     Policy No. BAP 9300064-05 and Individual State Selection/Rejection Forms.**

Zurich issued Policy No. BAP 9300064-05 simultaneously with Policy No. TRK 9299369-05.  Policy No. BAP 9300064-05 also provided liability coverage for business automobiles utilized by Panther, but did not cover Mr. Stemple's truck.  As discussed above, Panther submitted an individual written rejection of underinsured motorists coverage for Policy No. BAP 9300064-05  by completing and signing Form A1303, the standard form for Kansas, which states,

> "I acknowledge that I have been provided Uninsured Motorists Coverage/Insurance and, in addition, I have been offered the following in accordance with the law of the State of Kansas:
>
> > I have been given the opportunity to purchase Uninsured Motorists Coverage/Insurance (including Underinsured Motorists Protection) equal to my limits of liability for bodily injury or death, and instead I select lower limits of $25,000/$50,000 . . ."

Therefore, the policy limits for uninsured/underinsured motorists for Policy No. BAP

9300064-05 were the Kansas statutory minimums of $25,000 per person and $50,000 per accident.  Mr. Sliter also signed similar written rejections for uninsured/underinsured motorist coverage for other states.   No such form exists for Policy No. TRK 9299369-05, the policy which applied to coverage for Mr. Stemple's truck while driving on behalf of Panther.

> **D.     Defendant's Instant Motion.**

On February 14, 2007, plaintiffs filed this action, claiming they were entitled to underinsured motorist benefits resulting from the May 19, 2006 accident under Policy No. TRK 9299369-05 issued by defendant Zurich.  Defendant moves for summary judgment on the issue of plaintiffs' entitlement to underinsured motorist coverage, claiming that plaintiffs are only entitled to recover from Ms. Harris' policy.

## II.     Legal Standard.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1]  For the purpose of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[2]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248).

5

issue of material fact.[4]  To meet this standard, the moving party does not need to negate the claims of the non-movant; instead, the moving party can simply point out the absence of evidence for the non-moving party on an essential element of that party's claim.[5]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[6]  The non-moving party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[7]  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[8]  The court must consider the record in the light most favorable to the non-moving party.[9]  However, in a response to a motion for summary judgment, "a non-moving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment on the mere hope that something will turn up at trial."[10]

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001); and *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir., 1991).

[5] *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

[6] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

[7] *Liberty Lobby*, 477 U.S. at 256.

[8] *Id.*

[9] *See Doebele*, 157 F. Supp. 2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

[10] *Zapata v. IBM, Inc.,* 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. September 29, 1998)(citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

III.    **Discussion.**

A.    **Uninsured and Underinsured Motorist Coverage.**

Under Kansas Law, "[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court."[11]  Where, "the facts are admitted, then it is for the court to decide whether they come within the terms of the policy.[12]

In Kansas, the statutory provision governing underinsured coverage is found at K.S.A. § 40-284.  Section 40-284(a) requires all insurance liability policies issued with respect to motor vehicles registered or principally garaged in Kansas to include uninsured coverage.[13]  Kansas courts have repeatedly noted that the purpose of uninsured motorist coverage is to compensate the innocent victim who is injured by an uninsured motorist.[14]  Toward that end, the statute is to be "liberally construed to fulfill its intended purpose."[15]

Section 40-284(b) mandates uninsured motorist coverage include an underinsured motorist provision with coverage equal to the limits of liability coverage for bodily injury or death stated in the policy.[16]  Section 40-284(c), however, allows the "insured named in the policy to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107 and amendments

---

[11] *Harris v. Richards*, 867 P.2d 325, 327 (Kan. 1994) (citations omitted).

[12] *Id.*

[13] K.S.A. § 40-284(a).

[14] *Stewart v. Capps*, 789 P.2d 563, 564 (Kan. Ct. App. 1990) (citing *Parsons Mutual Ins. Ass'n v. Norwood*, 647 P.2d 1335, 1339 (Kan. Ct. App. 1982)).

[15] *Id.*

[16] K.S.A. § 40-284(b).

thereto."[17]  Section 40-3107(e) requires each policy to "contain stated limits of liability, exclusive of interest and costs, with respect to each vehicle for which coverage is granted, not less than $25,000 because of bodily injury to, or death of, one person in any one accident . . . ."[18] "Because the rejection provisions detract from the public policy goals of protecting innocent victims, the rejection provisions are narrowly and strictly construed by . . . courts."[19]

Under Kansas law, "[w]here underinsured motorist coverage exceeds the limits of bodily injury coverage carried by the owner or operator of the other car, underinsured motorist coverage exists.  Where underinsured coverage equals or does not exceed such limits, no underinsured motorist coverage exists."[20]  Therefore, if the underinsured motorist coverage provided by Zurich exceeds that provided by Ms. Harris's policy, the plaintiffs would be able to recover damages under the Zurich policy.  If, however, the underinsured motorist coverage provided by Zurich does not exceed the $50,000 coverage provided by Ms. Harris' policy, no additional coverage would be available to the plaintiffs under the Zurich policy.

### B.     The Rejection Requirements of K.S.A. § 40-284(c).

K.S.A. § 40-284(c) states that "the insured named in the policy shall have the right to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. § 40-3107 and amendments thereto."[21]

---

[17] K.S.A. § 40-284(c).

[18] K.S.A. § 40-3107(e).

[19] *Larson v. Bath*, 801 P.2d 1331, 1333 (Kan. Ct. App. 1991).

[20] *See Tilley v. Allied Prop. & Cas. Ins. Co.*, 111 P.3d 188, 192 (Kan. Ct. App. 2005).

[21] K.S.A. § 40-284(c).

8

1.      **Parties' Contentions.**

Defendant argues that Panther's submission of the Summary Form clearly meets the requirements of Section 40-284(c), as the Summary Form was signed by John Slitner, on behalf of Panther, the insured, and was in writing.  Defendant contends that the Summary Form clearly indicates Panther rejected underinsured motorist limits in excess of statutory minimums.  It points the court to the language of the Summary Form which states: "I have made the elections indicated and that I have the authority to sign this form on behalf of all Named Insureds on those policies listed above."  Defendant contends that the language stating "I have made the elections indicated" refers to elections made on the Summary Form itself, not any state specific form. Thus, Defendant contends that while Panther had liability limits in excess of the statutory minimums, Panther rejected uninsured/underinsured motorist coverage in excess of the statutory minimums by submitting to Zurich its Summary Form.

In contrast, plaintiffs argue that Panther's attempted rejection of underinsured motorist coverage in excess of the statutory minimums was legally ineffective.  Specifically, they contend that the Summary Form constitutes no more than an "acknowledgment" of lower insurance coverage, which the Kansas Court of Appeals held does not fulfill the requirements of K.S.A. § 40-284(c) in *Larson v. Bath.*[22]  Additionally, plaintiffs contend that the Summary Form clearly states that signing it is not a substitute for executing more specific state forms as the language of the Summary Form states, "Your signature on the summary form indicates you have read and understand each state-specific form and that the selections or rejections marked on the state forms have been accepted by you."  Thus, plaintiffs contend the Summary Form does not select

---

[22] 801 P.2d 1331 (Kan. Ct. App. 1990).

uninsured/underinsured policy limits in and of itself, but only acknowledges reading and understanding each state specific form.  Moreover, plaintiffs argue that any rejection must advise the insured of its coverage rights and the Summary Form fails to do so.  Finally, plaintiffs argue that defendant typically uses a state specific form to reject uninsured/underinsured policy coverage.  In fact, plaintiffs point to the Kansas state specific form that was signed and completed by Panther for Policy No. BAP 9300064-05.

### 2.   Analysis

In *Larson*, the court was confronted with a situation where the insured had negotiated coverage over the telephone with its insurance carrier.[23]  The parties agreed upon liability coverage of $1,000,000 and uninsured/underinsured motorist coverage of $50,000.[24]  Later, the insurance company provided the insured with a policy that listed uninsured/underinsured coverage as $50,000.[25]  Attached to the policy was a coverage limit rejection acknowledgment form, referred to as "Form A1303," utilized by the insurance company.[26]  However, the court found that "no form A1303 signed by a Katy representative was ever attached to the policy."[27]  The court's holding that the insured had not rejected excess coverage was based upon its conclusion that the insured had not submitted the form rejecting excess coverage, but rather that the form had been supplied by the company after negotiating coverage over the telephone.  As

---

[23] *Larson*, 801 P.2d at 1332.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

the court noted, "the *named insured* did not reject *in writing* the higher UM limits."[28]

In *Larson,* the rejection was invalid not because of the language of the rejection form, but rather because no form was signed or attached to the policy.  In the instant dispute, a purported rejection, the Summary Form, exists.  The relevant inquiry then is whether the language of the Summary Form constitutes a valid rejection of underinsured motorist coverage.  Also, the court does not read *Larson* to hold, as plaintiffs suggest, that "acknowledgments" of lower insurance coverage are ineffective waivers under the requirements of K.S.A. § 40-284(c). Instead, it appears that *Larson* requires that rejections be made in writing.  The *Larson* court directly rejected arguments that an rejection must be signed by the insured or be on an approved form.

In reaching its conclusion, the *Larson* court reviewed decisions from other jurisdictions to determine the purpose of imposing the "rejection in writing" requirement.  The court particularly  relied on *Patrick v. Cherokee Ins. Co.*,[29] which found that

> "There must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it . . . . The statutory mandate may be complied with only by including uninsured motorist coverage or by an affirmatively expressed rejection in writing by the insured."[30]

The court also finds guidance from *Bishop v. Empire Fire & Marine Insurance Company,*[31] a District of Kansas case interpreting the holding of *Larson.*  The *Bishop* court held that insurance solicitation materials and policy proposals did not satisfy the requirements of §

---

[28] *Id.* at 1334. (emphasis added)

[29] 512 A.2d 24 (Pa. Super. Ct. 1986).

[30] *Id. at* 27.

[31] 47 F. Supp. 2d 1300 (D. Kan. 1999).

40-284(c).[32]  While the materials manifested intent to limit uninsured motorist coverage, they were executed by the insurer, rather than the insured, and therefore ineffective to constitute a lawful rejection of uninsured motorist benefits.  The court did find that a letter written by an agent of the insured confirming that uninsured motorist coverage under the policy at issue was to be provided "only where mandatory and for the statutory limits only" was sufficient to constitute a rejection in writing within the meaning of K.S.A. § 40-284(c).[33]  The court held the letter, even as a confirmation document, was a writing, signed on the insured's behalf, which unequivocally and decisively rejected uninsured motorists benefits in excess of the statutory minimums.[34]

The *Bishop* court concluded that, under Kansas law, "any attempt to reject uninsured motorist coverage in excess of the statutory minimum must be 1) in writing, as required by § 40-284(c), and 2) the product of an affirmative, unequivocal act specifically effectuating the insured's rejection of excess coverage."[35]  The court drew this rule based upon the *Larson's* reliance on the language from *Patrick* and *Larson's* interpretation of K.S.A. § 40-284(c).

The court disagrees with defendant's argument that the Summary Form clearly indicates that Panther rejected underinsured motorist coverage in excess of statutory minimums. Defendant points the court to the language of the Summary Form directly above Mr. Sliter's signature which states, "I acknowledge that I have reviewed each individual state's selection/rejection form, I have made the elections indicated and that I have the authority to sign

---

[32] *Id.* at 1306.

[33] *Id.*

[34] *Id.*

[35] *Id.*

this form on behalf of all Named Insureds on those policies listed above."  Defendant contends that the language "I have made the elections indicated" refers to elections made within the Summary Form itself.  In contrast, the court finds that if the document is read in whole, this language instead refers to elections made on individual state forms.  The court reaches this conclusion by examining the Summary Form's repeated references to the individual state specific forms.  Specifically, the first paragraph of the Summary Form states "Your signature on this summary form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state forms have been accepted by you."  Considering this statement appears at the very top of the Summary Form and expressly references the selections or rejections made on other state forms, it is only logical that the language above the signature block stating "I have made the elections indicated" refers to those elections make on state forms, rather than the Summary Form.  The Summary Form also states in all capital letters that it is not a substitute for reviewing each individual state's selection/rejection form for UM and UMI coverage.  Again, the court finds the Summary Form clearly indicates that elections made on individual state forms control what selections or rejections have been made, rather than the Summary Form itself.

Additionally, the court finds that the letter sent by Mr. Meyerholt, Account Executive for Zurich, which accompanied the Summary Form illustrates that Zurich intended the Summary Form affirm selections made on state forms, rather than the insured making actual selections on the form itself.  In drawing this conclusion, the court points to the following language, "Your signature on the summary form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state forms have been accepted by you."

13

From the language of the letter from Mr. Meyerholt and the Summary Form itself, it appears that Zurich believed that signing the Summary Form was an effective waiver of uninsured/underinsured motorist coverage for states which do not require a signed rejection, as it was a writing and issued by the insured. The court notes that Kansas case law, as discussed above, requires the written rejection be the product of an affirmative, unequivocal act specifically effectuating the insured's rejection of excess coverage. Taking into account that rejection provisions are to be narrowly and strictly construed, the court holds that the Summary Form is not an affirmative, unequivocal act as it repeatedly references coverage elections made on individual state selection forms, not the Summary Form itself. The Summary Form does no more than affirm elections made on the individual state forms. Thus, because no individual state form was completed for Policy No. TRK 9299369-05, there was no election to affirm. The only Kansas excess limits rejection form which was submitted to the court was the one for the business automobiles policy—Policy No. BAP 9300064-05—signed by John Sliter, Panther's Controller, on September 15, 2005, the day before he signed the Summary Form.[36]

To be clear, the court is not suggesting that an approved form must be used to reject coverage, or that an acknowledgment could not be effective. Rather, the court's decision is based upon the fact that nothing in the Summary Form represents an affirmative, unequivocal decision to reject underinsured motorist coverage beyond statutory minimums. While it may have been the intent of both Panther and Zurich to limit underinsured motorist coverage, this intent is not properly manifested in the Summary Form and intent alone is ineffective to limit

---

[36] *Compare* Doc. 50-27 and Doc. 46-2.

14

coverage.[37]

Meanwhile, while not dispositive of the issue, the court finds it curious that defendant Zurich presented an individual state form for Kansas signed and completed by Panther for Policy No. BAP 9300064-05 but no such form for Policy No. TRK 9299369-05.  This fact gives even more credence to the position that both Panther and Zurich understood that the state specific forms controlled the selection or rejection of underinsured motorist coverage, rather than the Summary Form.  The court can only wonder why, if both Panther and Zurich believed an individual state form was truly unnecessary, a Kansas rejection form with a signature line executed by Panther's representative was issued for Policy No. BAP 9300064-05 but not for Policy No. TRK 9299369-05.

Finally, the court finds persuasive the Kansas Insurance Department's Bulletin 1981-20, as it interpreted K.S.A. § 40-284 and provided a sample written rejection form, which the agency believed would satisfy the requirements of K.S.A. § 40-284(c).  The court gives deference to the Insurance Department's Bulletin, under the doctrine of operative construction, as it is a specialized agency charged with enforcing Kansas insurance laws.  The doctrine of operative construction has been explained as follows:

> "The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference.  This deference is sometimes called the doctrine of operative construction.  Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review.  If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps.  The determination of an administrative body as to questions of

_____

[37] *Larson*, 801 P.2d at 1333 ("where the UM statute has a written rejection requirement, something less is ineffective despite clear evidence of the insured's intent to reject the coverage.").

law is not conclusive and, while persuasive, is not binding on the courts."[38]

The court notes that Bulletin 1981-20 was also relied upon by the Kansas Supreme Court when interpreting the requirements of K.S.A. § 40-284(c).[39]

The Insurance Department's sample rejection form attached to Bulletin 1981-20 states:

KANSAS UNINSURED MOTORIST COVERAGE EXCESS LIMITS REJECTION

(Acknowledgment Of Coverage Rejection)

I acknowledge that I have been provided Uninsured Motorist Coverage and, in addition, I have been offered the following in accordance with the law of the State of Kansas:

I have been given the opportunity to purchase Uninsured Motorist Coverage (including Underinsured Motorist Protection) equal to my limits of liability for bodily injury or death, and instead I select lower limits of $25,000/$50,000.

I understand and agree that this acknowledgment of the coverage rejection shall be applicable unless I subsequently request such coverage in writing.

Name of Vehicle _____ Year _____ Vehicle I.D. # _____

_____
(Date)

_____
(Insured's Signature)

After review of the Insurance Department's sample rejection form and the Summary Form at issue in this case, the court finds the differences in the two documents striking.  First, the Insurance Department's sample form directly references the insured's knowledge of the opportunity to purchase underinsured motorist protection equal to the limits of liability and the insured's express decision to select lower limits.  No such declaration appears on the Summary

---

[38] *State Dept. of SRS v. Public Employee Relations Bd.*, 815 P.2d 66, 69 (Kan. 1991).

[39] *McTaggart v. Liberty Mutual Ins.*, 983 P.2d 853, 857 (Kan. 1999).

16

Form.  Most importantly, and as discussed above, the Summary Form only reference selections made on other individual forms and not the Summary Form itself.  Additionally, the court finds that the language of the Insurance Department's sample form is almost identical to the individual Kansas state rejection form signed and submitted for Policy No. BAP 9300064-05 as well as numerous other forms submitted by Panther for different states.

The Court rejects defendant Zurich's argument that the insured's signing of the Summary Form by itself is adequate to establish the fact that Panther rejected the higher uninsured/underinsured insurance limits otherwise applicable to the vehicle policy covering the truck driven by James Stemple.

Also of concern to the court are the apparent differences in the Summary Form submitted by the plaintiffs in opposition to defendant's motion for summary judgment compared to the Summary Form submitted by the defendant.  The version of the Summary Form submitted by the plaintiffs[40] reflects that seventeen jurisdictions including Kansas are not mentioned at all.  The state of Kansas appears to have been deleted ("whited out") from the document as well as fourteen other states, the District of Columbia and Puerto Rico, while defendant's submission[41] lists all 52 jurisdictions.  Although this would appear to be a significant material difference, neither party challenges the accuracy of the other's exhibit in this regard.  No explanation is offered for these disparities.  The Court will not speculate.  Moreover, although defendant's Summary Form specifically requires that for "those states marked with an asterisk(*), the first named insured must sign that state's selection/rejection form," no such form is offered to the

---

[40] (Doc. 50-28).

[41] (Doc. 46-2).

court which is specific to the trucker policy for any of the 21 states so identified in its Summary Form.  Admittedly, some of the state forms do not designate whether the selection/rejection is applicable to both the BAP and TRK polices referenced on the Summary Form.  But, no form has been submitted which specifically references Policy No. TRK 9299369-05.

The Court notes that the $1.6 million annual premium for Policy No. TRK 9299369-05, applicable to trucks including the one owned by the decedent, is significantly greater than the $20 thousand annual premium for coverage of Panther's business automobiles.[42]  Since this case involves the truck policy which certainly was vastly more expensive than the automobile policy, wouldn't it have been at least as important to obtain signed state selection/rejection forms for the truck policy in those states that require it? No such specific forms have been submitted by either party.  Further, if it was the intention of the insuror and the insured to cover both the BAP and the TRK policies in the individual state forms, why was only the BAP policy specifically listed? If these discrepancies and questions are to be resolved, they must await another day.

Further, the face page of both the TRK and the BAP policies appear to indicate that they are renewal policies.  If such is the case, Kansas law provides that there would be no need for a written rejection if a valid written rejection by the insured were in place at the time the original policy was issued and, presumably, no intervening changes had been made.[43]  Neither party has directly addressed this issue.

---

[42] *See* Memorandum in Opposition by Plaintiff Kandy Stemple, Ex. A-1, Zurich Insurance Policy No. TRK 9299369-05 (Doc. 50-3) and Ex. B-2,  Zurich Insurance Policy No. BAP 9300064-05 (Doc. 50-14).

[43] *Larson*, 801 P.2d at 1334 ("[I]f a valid written rejection by the named insured was in place at the time the original policy was issued, there would be no need for a written rejection on the renewal policy.") (*citing* K.S.A. § 40-284(c)).

**IV.    Conclusion**

The evidence submitted regarding defendant's motion for summary judgment does not clearly demonstrate the absence of material issues of fact.  After careful consideration of the relevant case law and agency interpretation of K.S.A. § 40-284(c), as well as a detailed review of the Summary Form and other evidence submitted, the court concludes that defendant has failed to establish that it is entitled to judgment as a matter of law.  The Summary Form, by itself, is legally insufficient to reject underinsured motorist coverage in excess of the Kansas statutory minimums.  The Summary Form represents neither an affirmative nor unequivocal rejection of insurance coverage as required in Kansas.  Defendant's motion for summary judgment should be denied.

Accordingly,

**IT IS THEREFORE ORDERED THAT** defendant's motion for summary judgment (Doc. 45) is hereby denied.

**IT IS SO ORDERED**.

Dated this <u>30th</u> day of September, 2008, at Topeka, Kansas.

<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge
